**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

UNITED STATES OF AMERICA

v.

CHAD M. FULK

CAUSE NO.: 1:18-CR-80-HAB
1:22-CV-195-HAB

**OPINION AND ORDER**

Chad Fulk ("Fulk") pled guilty to one count in violation of 21 U.S.C § 841 in March 2021 and was then sentenced by this Court. (ECF Nos. 60, 79). The Court appointed Robert Gevers II ("Gevers") to represent him. (ECF Nos. 9, 10). Fulk now alleges that Gevers provided ineffective assistance of counsel and moves to vacate his sentence under 28 U.S.C. § 2255. (ECF No. 94). For the reasons below, Gevers provided competent representation and Fulk's arguments lack merit. The Court therefore denies Fulk's § 2255 petition.

**A. Factual Background**

On September 23, 2017, a Fort Wayne police officer tried to stop a stolen car that Fulk was driving. (ECF No. 72, ¶ 11). Fulk proceeded to drive the wrong way down a one-way street, strike an SUV, and then attempted to flee on foot. (*Id.*). Upon his arrest, officers found $5200 on his person and 118.8 grams of methamphetamine in the car. (*Id.* at ¶¶ 11-12). Fulk admitted that he "flips" methamphetamine for profit and had bought four ounces for around $8500. (*Id.* at ¶ 14). Allen County charged Fulk with multiple crimes for this incident. (ECF No. 10-1). He posted bond in October 2017 and was placed on conditional release. (*Id.*)

In the summer of 2018, two cooperating defendants in other federal cases reported that Fulk was supplying them with methamphetamine. (ECF No. 72, ¶ 18). The first informant said that Fulk supplied them with 226 grams in June 2018. (*Id.*). The second informant stated that Fulk

was "providing a quarter-pound to a half-pound of methamphetamine roughly once or twice a week." (*Id.*).

In July 2018, LaGrange County police obtained a state warrant to search the residence of some local marijuana dealers. (*Id.* at ¶ 16). Upon searching the residence, officers found Fulk hiding in bed with one of the residents and a female child. (*Id.*). In Fulk's pants pocket, officers found 63.3 grams of methamphetamine. (*Id.*). In the room where Fulk was hiding, officers discovered $10,415 in cash, three rifles, and two handguns. (*Id.*).

A grand jury indicted Fulk with two counts of possessing 50 grams or more of methamphetamine under 21 U.S.C. § 841(a)(1). (ECF No. 1). Count 1 was based on drugs obtained in the Fort Wayne car chase, while Count 2 focused on the drugs found in the LaGrange County search. (*Id.*).

In March 2021, Fulk pled guilty to Count 1 pursuant to a plea agreement. (ECF No. 55). In exchange for the guilty plea, the government agreed to dismiss Count 2 and make a non-binding recommendation that Fulk (1) receive full credit for acceptance of responsibility and (2) be held responsible for no more than 1.5 kilograms of methamphetamine (actual). (*Id.* at ¶¶ 8(c), (f)).

At the change of plea hearing, the government informed the magistrate that it had offered Fulk four separate plea agreements. (ECF No. 90 at 2). The plea agreement that Fulk signed was in some respects more favorable to Fulk than the previous offers and in other respects less favorable. While it did not require a 15-year mandatory minimum sentence and included a capped drug quantity recommendation, it did not require the government to recommend the Court impose a sentence at the minimum of the guideline range. (*Id.* at 9). After all of this was explained on the record, Fulk told the magistrate that he "was satisfied with this plea agreement." (*Id.* at 10). And

Fulk agreed that "he was truly satisfied with Mr. Gevers representation [] and the advice he has given [] in this case." (*Id.* at 12).

Fulk swore he reviewed the plea agreement with Gevers and understood the terms contained therein. (*Id.* at 14-15). He also stated that nobody had made any promises or assurances which were not contained in the plea agreement. (*Id.* at 15). Fulk was aware that he faced a sentencing range from 10 years up to life in prison. (*Id.* at 22-23). And he knew that his guideline range would not be known until completion of the Presentence Investigation Report ("PSR"). (*Id.*). Even still, Fulk wished to waive his rights and plead guilty. (*Id.* at 26). He laid a factual basis for Count 1 and admitted that he possessed with intent to sell methamphetamine in September 2017. (*Id.* at 27-31).

The final PSR was completed in June 2021. (ECF No. 72). Fulk had 27 criminal history points—more than twice the number needed to qualify for the highest criminal history category of VI. (*Id.* at ¶ 95). He has prior convictions for battery, conversion, residential entry, non-support of a child, pointing a firearm, theft, escape, and resisting law enforcement. (*Id.* at ¶¶ 48-92). And he has been convicted for possessing or dealing methamphetamine in Noble, Allen, and Dekalb counties in Indiana. (*Id.* at ¶¶ 76-85, 91-92). The PSR initially classified Fulk as a career offender, but Gevers objected to that finding and the objection was "well taken." (ECF No. 91 at 5).

The PSR held Fulk responsible for between 500 grams and 1.5 kilograms of methamphetamine (actual). (ECF No. 72, ¶ 29). Indeed, after reviewing the investigative documents, the probation officer concluded that a "conservative estimate of the defendant's offense, including all relevant conduct, involves between 500 grams and 1.5 kilograms of methamphetamine (actual) comprised of the quantities and currency detailed above, as well as corroborating statements from cooperating individuals." (*Id.* at ¶ 19).

Under U.S.S.G § 2D1.1(a)(5), the drug quantity produced a base offense level of 34. (*Id.* at ¶ 29). While the PSR recommended a two-level enhancement because Fulk recklessly endangered others when fleeing, it also recommended a three-level reduction because he accepted responsibility. (*Id.* at ¶¶ 33, 36-37). Combining Fulk's criminal history category and offense level of 33, his advisory guideline range was between 235 and 293 months imprisonment. (*Id.* at ¶ 130).

Gevers raised one factual objection to the PSR, but did not challenge the guideline range or any of its underlying components. (ECF No. 73). And Gevers argued for a sentence well below the guideline range—a 188-month sentence. (*Id.* at 3). Gevers believed a below range sentence was appropriate based on Fulk's long history of substance abuse, full acceptance of responsibility, and commitment to furthering his education and better understanding his addictions. (*Id.* at 3-6).

Fulk was sentenced in July 2021. (ECF No. 79). After being placed under oath, Fulk confirmed that he reviewed the PSR and addendum with Gevers. (ECF No. 91 at 3-5). After the government dismissed Count 2, Gevers presented two character witnesses on Fulk's behalf. (*Id.* at 11-17). The Court then invited argument.

The government argued for an above minimum sentence, but still within the guideline range. (*Id.* at 29). The government viewed Fulk's case as "far worse" than Jason Wallen's ("Wallen")—a man the Court had sentenced the day prior and whom Gevers also represented. (*Id.* at 17-18). The government emphasized that Fulk fled officers in a high speed chase and endangered the family whose SUV he crashed into. (*Id.* at 18). They also noted that Fulk was a "dealer for profit" that fueled his customers' addictions and his criminal history contained numerous failed chances to successfully complete parole or drug treatment. (*Id.* at 19-29).

Before turning to Gevers, the Court provided its own commentary. The Court commented that Fulk and Wallen presented somewhat similar cases and the Court was "mindful" of the "issue

of disparity." (*Id.* at 29-30). At the same time, there was "a big difference between these cases." (*Id.* at 30). Fulk had far more criminal history points—27 versus "16 or 17" for Wallen—and his "offense conduct[] is much more concerning." (*Id.* at 30).

Gevers responded to the Court's concerns: "I appreciate the Court's position, because it's one thing I look at as well. I don't want to ruin my credibility with the Court by coming in and spouting off that they're exactly the same." (*Id.*). Gevers then asked the Court to listen to Fulk's allocution because Gevers had "said [his] peace in the sentencing memorandum. The Court knows what [he] would reiterate as far as [Fulk's] upbringing and such." (*Id.* at 31).

After permitting Fulk to allocute, the Court took a brief recess. (*Id.* at 32-34). When the hearing resumed, the Court noted that the "case was a difficult one." (*Id.* at 34). In aggravation, the Court observed "the defendant's significant criminal history," his violations of probation, and instances where he fled police. (*Id.* at 35). Notably, Fulk continued his criminal activity after being charged for the September 2017 offense. (*Id.*). In mitigation, the Court pointed to Fulk's lack of youthful guidance, early drug use, his remorse, and his efforts to further his education. (*Id.* at 36-37). Ultimately, the Court imposed a 262-month prison term—the middle of the guideline range. (*Id.* at 37).

## B. Legal Standards

### 1. Section 2255

Under Section 2255(a) of Title 28 a federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

attack, [and] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Section 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (citation omitted). Relief sought under Section 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). And a court may deny a Section 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### 2.   Ineffective Assistance of Counsel

The Sixth Amendment provides criminal defendants with the right to counsel and "inherent in this right is that the defendant is entitled to effective assistance of counsel." *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009). To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that their counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Indeed, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *See also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). A court must view "the conduct from the counsel's perspective at the time" absent "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

On the first prong, the court applies a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). An attorney "need not be perfect, indeed not even very good, to be

6

constitutionally adequate." *Dean v. Young*, 777 F.2d 1239, 1245 (7th Cir. 1985). "A strategic decision, even if clearly wrong in retrospect, cannot support a claim that counsel's conduct was deficient." *United States v. Yancey*, 827 F.2d 83, 90 (7th Cir. 1987).

On the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harringto*n, 562 U.S. at 104 (internal quotation and citation omitted). The errors must render the proceeding "fundamentally unfair or unreliable." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013).

## C. Discussion

Fulk came forward with what can be reduced to seven arguments to attack Gevers' performance. Fulk's petition focuses on Gevers' conduct as well as alleging that Gevers had a conflict of interest because of the Court's comparison of his case and Wallen's. *See Burkhart v. United States*, 27 F.4th 1289, 1295 (7th Cir. 2022) ("The Sixth Amendment guarantees criminal defendants not only the right to the effective assistance of counsel, but also the correlative right to representation that is free from conflicts of interest."). He asserts that: (1) Gevers failed to object to the second informant's statement included in the PSR; (2) Gevers failed to inform him of two prior plea offers; (3) Gevers labored under a conflict of interest because of his representation of Wallen; (4) Gevers failed to file a motion to suppress at his request; (5) Gevers did not challenge the reckless endangerment enhancement; (6) Gevers failed to review the PSR with him; and (7) Gevers failed to challenge the drug quantity calculation in the PSR. Fulk believes that, in the aggregate, these alleged failures rendered Gevers' representation constitutionally defective.

**1. Gevers' Decision Not to Challenge the Second Informant's Statement Did Not Prejudice Fulk.**

Paragraph 18 of the PSR included statements from the second informant that "F[ulk] had been fronting methamphetamine to him since fall of 2017, with F[ulk] providing a quarter-pound to a half-pound of methamphetamine roughly once or twice a week until about May of 2018." (ECF No. 72, ¶ 18). Fulk alleges that this statement is false because he was incarcerated from the fall of 2017 until the beginning of 2018. (ECF No. 94-1 at 1). Gevers did not object to the inclusion of this statement and Fulk believes that failure prejudiced him.

The evidence supporting that Fulk was incarcerated during this time period is thin. Fulk pled guilty to possessing methamphetamine in November 2017 which he was incarcerated for until January 2017. (ECF No. 72, ¶ 91). A parole warrant was served on October 25, 2017, for this offense, but nothing in the PSR suggests this led to his incarceration. And the Court cannot discern based on the documents that Fulk provided what his period of incarceration actually was. (ECF No. 105-2).

Fulk does appear to have been incarcerated in Allen County from September 2017 until October 9, 2017. (ECF No. 100-1). Yet that is still consistent with the second informant's statement reflecting that Fulk began supplying him with methamphetamine in fall 2017. Even giving Fulk the benefit of the doubt, Fulk was likely responsible for more than 500 grams of methamphetamine solely based on the drugs and cash recovered from his offense of conviction, the first informant's statements, and the LaGrange County arrest. Had this statement been set aside, the guideline range and the Court's likely sentence would not have changed. Failing to attack the second informant's statement did not prejudice Fulk.

**2.  There is No Support in the Record that Fulk Did Not Know of The Prior Plea Offers.**

Fulk claims that Gevers failed to inform him of previous plea offers from the government. And defense counsel's failure to inform a defendant of all formal plea offer may violate the Sixth Amendment. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012); *See also Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017). Yet Fulk's sworn testimony at his plea hearing directly contradicts the assertion that he was uninformed of the previous offers. (ECF No. 90). There is nothing in the record suggesting that he was unaware of the prior offers and, in fact, his own assertions suggest the opposite.

To show prejudice in this context, the defendant must show a reasonable probability that he would have accepted the more favorable plea and received a more favorable sentence. *Day v. United States*, 962 F.3d 987, 992 (7th Cir. 2020). "[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *Bethel v. United States*, 458 F.3d 711, 719 (7th Cir. 2006).

At the plea hearing, the government told the magistrate that Fulk had been offered "four different plea agreements." (ECF No. 90 at 8). First, the Court is not convinced that any of the prior plea offers were more favorable and Fulk does not identify which offers he would have taken.[1] Even assuming the prior offers were more favorable, all four offers were discussed on the record. (*Id.* at 8-9). Just after, Fulk stated that he was "satisfied with *this* plea agreement." (*Id.* at 10, emphasis added). If the Court were to find that Fulk was uninformed of the previous plea

---

[1] Only the final plea agreement required the government to (1) withdraw a mandatory minimum 15-year sentence and (2) recommend a 1.5 kilogram cap on Fulk's drug quantity. (ECF No. 90 at 8-9). The only prior favorable provision omitted in the final agreement was a government recommendation that Fulk receive a sentence at the minimum of the guideline range. (ECF No. 91 at 9).

offers, it must also find that he lied under oath when he expressed satisfaction with the offer he signed. Fulk offers no compelling reason for this Court to accept that he perjured himself. *See Bethel*, 458 F.3d at 719.

### 3. There Existed No Conflict of Interest.

Next, Fulk argues that Gevers labored under a conflict of interest. In essence, Fulk alleges that Gevers' representation of Fulk and Wallen conflicted him and made him reluctant to speak on Fulk's behalf at sentencing. (ECF No. 94-1 at 5). He also alleges that Gevers' participation in Wallen's proffer prejudiced him. (*Id.* at 6). Yet Wallen and Fulk were not co-defendants and there is no indication of any other connection between the two. There was no actual conflict of interest and, even if there was, Gevers' representation of Wallen did not prejudice Fulk.

The Sixth Amendment guarantees conflict-free counsel. *Burkhart v. United States*, 27 F.4th 1289, 1295 (7th Cir. 2022). In the guilty plea context, the defendant must show both that his lawyer had an *actual* conflict and that conflict-free counsel would have performed differently. *Id*. An actual conflict exists only when a defense lawyer's representation of two clients breaches the ethics codes or "impedes the attorney's ability to provide effective assistance of counsel within the meaning of *Strickland*." *United States v. Turner*, 594 F.3d 946, 952 (7th Cir. 2010). Proving prejudice in the conflict of interest context is "a significant burden." *United States v. Coscia*, 4 F.4th 454, 475 (7th Cir. 2021).

Lawyers can represent multiple clients unless the clients' positions are directly adverse or there is a significant risk that the representation of one client will be materially limited by the lawyer's responsibility to other clients. Ind. R. of Prof'l Conduct 1.7. To reiterate, there is no evidence that Wallen and Fulk had any connection which would create a conflict of interest. Even

still, Fulk believes that the joint representation made Gevers hesitant to speak on his behalf at sentencing.

Gevers' statement that Fulk is concerned with was made in response to this Court's comment that it did not view Wallen as a fair sentencing comparator. (ECF No. 91 at 30). Gevers' full statement was as follows: "I appreciate the Court's position, because it's one thing I look at as well. I don't want to ruin my credibility with the Court by coming in and spouting off that they're exactly the same." (*Id.*). Immediately following Fulk's allocution, Gevers indicated that he had "said [his] peace in the sentencing memorandum. The Court knows what [he] would reiterate as far as [Fulk's] upbringing and such." (*Id.* at 31).

This did not prejudice Fulk. *See Swanson v. United States*, 692 F.3d 708, 717-18 (7th Cir. 2012) (Indicating that flagging an issue in a sentencing memorandum is typically sufficient to preserve an issue and meet the basic Sixth Amendment level of competence; counsel can use professional judgment when deciding whether to raise the matter again orally at sentencing). Gevers flagged the issues in the sentencing memorandum, arguing at length for the Court to impose a below-range sentence. Given Fulk's extensive criminal history, trying to argue similarities between Wallen and Fulk would have proven ill-advised—especially when considering the Court's commentary. Even still, Gevers presented brief argument which highlighted several points made in his sentencing memorandum. Few, if any, lawyers would have pressed the issue especially where the Court indicated that it saw such glaring and "big difference[s]" between Fulk and Wallen. (ECF No. 91 at 30).

### 4. Gevers' Failure to File a Motion To Suppress Did Not Prejudice Fulk.

Fulk claims that Gevers performed ineffectively by failing to file a motion to suppress in relation to the LaGrange County search in July 2018. He believes that he had standing to challenge

the search and it violated his Fourth Amendment protection against unreasonable searches and seizures. From the evidence provided, Fulk cannot establish that a motion to suppress would have had merit nor can he establish that any such failure prejudiced him.

When a claim of ineffective assistance of counsel is based on counsel's failure to present a motion to suppress, the defendant must prove that the motion had merit. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). First, Fulk has alleged no fact that would allow this Court to determine whether a motion to suppress the evidence collected from the LaGrange County search would have merit. Nor is there any indication that the state search warrant was invalid or that the LaGrange County officers exceeded its scope. Yet even if there was a valid Fourth Amendment challenge, Fulk did not plead guilty to Count 2 which focused on the LaGrange County search. Instead, he pled guilty to Count 1 where he crashed a car and admitted to possessing methamphetamine. (ECF No. 90 at 30). "The exclusionary rule does not apply to criminal sentencing." *United States v. Sanders*, 743 F.3d 471, 475 (7th Cir. 2014). Thus, had the evidence been successfully suppressed at trial, it still could have been considered for the purposes of sentencing. The outcome of Fulk's sentencing would not have changed and no prejudice exists.

5. **Failing to Challenge the Reckless Endangerment Enhancement Did Not Prejudice Fulk.**

Fulk next suggests that Gevers was ineffective by failing to object to the two-level enhancement he received for recklessly creating a substantial risk of serious bodily injury while fleeing law enforcement. (ECF No. 72, ¶ 33). Fulk does not factually oppose the enhancement and the facts are clear. While fleeing police, Fulk crashed into an SUV, caused it to spin, and the car struck a home. (*Id.* at ¶ 11). The SUV was heavily damaged and the occupants suffered "pain and a bloody nose." (*Id.*). Rather, Fulk claims that the magistrate said, "the plea agreement called for

no enhancements." (ECF No. 94-1 at 9). Accordingly, he believes that the enhancement was improperly applied.

Fulk offers no record citation for this claim nor does the Court see any such reference in the change of plea transcript. To the contrary, Fulk acknowledged that he read and understood his plea agreement. He confirmed that there were no promises made outside of his plea agreement. And the plea agreement contains no discussion as to whether the reckless endangerment enhancement would apply.

Even still, Fulk contends that he asked Gevers to object to the enhancement. But a lawyer has no duty to raise frivolous objections. *See Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005). The record clearly supports the enhancement. Fulk fled police, caused a high-speed chase, crashed into another occupied vehicle, injured the other vehicle's occupants, and damaged a home. (ECF No. 72, ¶ 11). Based on the undisputed facts, any objection to a reckless endangerment enhancement would have been frivolous.

**6. There is No Support For Fulk's Claim that Gevers Failed to Review the PSR With Him.**

Fulk claims that Gevers failed to review and "dissect" the PSR with him which prejudiced him at sentencing. Yet at sentencing, this Court directly asked Fulk if he had "enough time to review the Presentence Investigation Report and addendum with your lawyer before today's hearing?" (ECF No. 91 at 5). Fulk's response was "Yes, I did, your Honor." (*Id.*). Fulk has offered no reason for this Court to find that he perjured himself at sentencing. *See Bethel,* 458 F.3d at 719. Based on Fulk's own assertions, he reviewed the PSR with Gevers and was satisfied with his representation. The Court sees no reason—let alone a compelling one—to find otherwise.

**7. Gevers Rationally Decided Not to Challenge the PSR Drug Quantity.**

13

Fulks' final two argument concern Gevers' decision not to challenge the PSR drug quantity of 500 grams to 1.5 kilograms of methamphetamine (actual). First, Fulk criticizes Gevers for failing to object to the PSR drug weight because the government failed to show his meth was "ice" as opposed to a mixture. Second, Fulk believes that Gevers should have objected to the inclusion of his relevant conduct from Count 2 because it is a separate instance from Count 1—the count under which he pled guilty. Fulk cannot demonstrate that the failure to raise either objection prejudiced him because both objections lack merit.

In considering the Guidelines, defense counsel need only make a good-faith effort to discover and analyze the relevant facts and law. *Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000). Methamphetamine (actual) and ice are separately defined in the drug table. *See* U.S.S.G. § 2D1.1(c) n.(B)-(C). Methamphetamine (actual) is established by multiplying a drug mixture containing methamphetamine by its purity. U.S.S.G. § 2D1.1(c) n.(B). Absent contrary evidence, it is plausible to infer from laboratory testing of seized methamphetamine that its purity is comparable to the purity of other methamphetamine obtained from the same conspiracy. *United States v. Castaneda*, 906 F.3d 691, 694-96 (7th Cir. 2018). And it is plausible to convert seized cash seemingly derived from drug sales into equivalent amounts of drugs. *United States v. Simmons*, 582 F.3d at 730, 737 (7th Cir. 2009).

The government seized 118.8 grams of 98% pure methamphetamine and $5,203.32 cash from Fulk in September 2017. (ECF No. 72, ¶¶ 11-12). They seized 63.3 grams of 100% pure methamphetamine as well as $10,415 from his pockets and a backpack in July 2018. (*Id.* at ¶¶ 16-17). In September, Fulk admitted that he purchased approximately 113 grams of methamphetamine for $8500. (*Id.* at ¶ 14). At that price, $15,619.32 could have purchased another 208.2 grams of methamphetamine. And the first informant reported that Fulk sold 226 grams of methamphetamine

with no reason to believe those drugs were not equally pure. From these figures alone, Fulk's drug weight was around 616.3 grams of methamphetamine without even considering the second informant's statement. There is no reason to believe that a challenge to the drug quantity would have succeeded. Further, asserting the meritless objection could have led to loss of acceptance of responsibility and a higher guideline range. *See United States v. Major*, 33 F.4th 370, 383 (7th Cir. 2022) (Indicating that when a defendant raises factual challenges to relevant conduct in the PSR and those challenges are found to lack merit, the district court can find the defendant failed to accept responsibility). In the end, Gevers' decision not to object, likely benefited Fulk.

Lastly, Fulk claims that Gevers performed ineffectively by failing to object to the relevant conduct in the PSR that had originally been charged in Count 2. Relevant conduct includes all of a defendant's drug sales that are part of the same course of conduct or common scheme or plan. U.S.S.G. § 1B1.3(a)(2). Drug sales are part of the same course of conduct when they are part of an ongoing spree or series of offenses and are part of a common scheme when the sales are substantially connected by a common purpose or similar modus operandi. *United States v. Purham*, 754 F.3d 411, 414 (7th Cir. 2014). Absent conflicting evidence, a district court may rely on a PSR's assertions related to relevant conduct and drug weight. *United States v. Rollerson*, 7 F.4th 565, 572 (7th Cir. 2021).

Here, it was reasonable for this Court to rely on the relevant conduct asserted in the PSR. Absent a significant "temporal gap," drug sales are considered part of the same course of conduct. *See Purham*, 754 F.3d at 414 (finding temporal gap where the defendant was in jail for almost two years). There is no such temporal gap that Fulk can establish. Fulk possessed the drugs from the charged offense in September 2017. (ECF No. 72, ¶¶ 12-14). After spending just a few weeks in jail in September and early October 2017, he steadily sold methamphetamine to the second

15

informant from fall 2017 until May 2018. (*Id.* at ¶ 18). Fulk sold to the first informant in June 2018. (*Id.*). And officers found more drugs in Fulk's possession during the July 2018 LaGrange County search. (*Id.* at ¶¶ 15-17). All of the aforementioned was part of Fulk's overall course of conduct and he provides no information to cast doubt on the PSR. Any objection would have been meritless, so Gevers had no reason to raise one. *See Fuller*, 398 F.3d at 652.

The record is clear. This Court imposed a significant sentence based on Fulk's recurrent drug crimes and extensive criminal history—not because of anything Gevers erroneously did or failed to do. In sum, Gevers performed effectively in representing Fulk's interests, so the Court must deny his § 2255 petition.

### D. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Fulk has not made a substantial showing, so the Court declines to enter a certificate of appealability.

### E. Conclusion

For the reasons stated above, the Court DISMISSES the Defendant's Motion to Vacate

Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 94) and DECLINES to issue a certificate of

appealability.

SO ORDERED on November 16, 2023.

 s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT